O

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIA A. RIEVE, | CASE NO. SACV 11-1032 DOC (MLGx) |
| Plaintiff(s), | |
| v. | **O R D E R** GRANTING IN PART AND DENYING IN PART DEFENDANTS' SUMMARY |
| COVENTRY HEALTH CARE, INC. And COVENTRY HEALTH CARE WORKERS COMPENSATION, INC., | JUDGMENT AND SUA SPONTE GRANTING IN PART SUMMARY JUDGMENT FOR PLAINTIFF |
| Defendant(s). | |

Before the Court is a Motion for Summary Judgment, or in the alternative, a Motion for Partial Summary Judgment filed by Defendants Coventry Health Care, Inc. and Coventry Health Care Workers Compensation, Inc. (Docket 42) ("Motion for Summary Judgment"). After careful consideration of the moving, opposing, and replying papers, this Court hereby GRANTS IN PART AND DENIES IN PART Defendants' Motion for Summary Judgment. The Court also sua sponte GRANTS IN PART summary judgment for Plaintiff.

## I. BACKGROUND

Plaintiff Julia Rieve[1] ("Plaintiff") filed the present action on April 11, 2011 in the Northern District of California against Defendants Coventry Health Care, Inc. ("CHC") and Coventry Health Care Workers Compensation, Inc. ("CHC-WC") (collectively, "Defendants"). On July 6, 2011, the parties stipulated to transferring venue to the Central District of California. On September 15, 2011, this Court granted the parties' stipulation for leave for Plaintiff to file a First Amended Complaint ("FAC"), which added an additional cause of action for the California Labor Code's Private Attorney General Act ("PAGA") (Docket 27). On March 19, 2012, this Court granted Plaintiff's Motion for Leave to Amend (Docket 86) and permitted Plaintiff to file the Second Amended Complaint ("SAC"), which is now the operative complaint (Docket 91).

Plaintiff's primary claim against Defendants is that they improperly classified her and others similarly situated as exempt from the overtime requirements of the Fair Labor Standards Act ("FLSA") and California Labor Code. Plaintiff also asserts claims under California's Unfair Competition Law ("UCL") based on Defendants' alleged violation of California overtime law and alleged failure to provide meal and rest breaks; California Labor Code § 226 based on Defendants' alleged failure to provide accurate wage statements; and PAGA.

Defendant CHC-WC, which is owned and operated by Defendant CHC, is a corporation that "provides solutions to help its clients, including workers' compensation insurers and employers, reduce the costs associated with workers' compensation injuries, ensure quality care, and improve return to work rates and timing." Defendants' Reply to Statement of Facts ("Reply to SOF"), ¶ 1. CHC-WC provides its clients with medical field case management services, carried out by employees working in the Field Case Manager - Medical Workers' Compensation position ("FCM-Med" or "FCM"), to help clients' injured workers return to work as quickly, safely, and cost-effectively as possible. *Id.* at ¶ 2-3. Although Defendants dispute that Plaintiff

---

[1]The SAC added Carrie Gold as an additional class representative. Defendants' Motion for Summary Judgment was filed before this Court granted Plaintiff's Motion to Amend and, as such, only seeks to dismiss Julia Rieve's individual claims. Ms. Gold thus has no relevance to this Order and is not implicated in any way by the Court's discussion of "Plaintiff," which shall only refer to Ms. Rieve in the context of this Order.

1   was employed by CHC, there is no dispute that Plaintiff held the position of FCM-Med during

2   her tenure with CHC-WC[2]. *Id.* at ¶ 4. Plaintiff, a registered nurse ("RN"), was required by

3   Defendants to be a state-licensed RN and to have three or more years of case management

4   experience in order to hold the position of FCM-Med. *Id.* at ¶ 17-20. Despite the RN

5   requirement, Plaintiff was not engaged in direct patient care in her capacity as a FCM-Med. *Id.*

6   at ¶ 24. While employed by Defendants, Plaintiff earned a fixed weekly salary ranging from

7   $954 to $1096, which she was paid regardless of the hours she worked or the quality of her

8   work. *Id.* at ¶ 40.

9        Despite the parties' varied interpretations of the nature of Plaintiff's duties, a close

10   analysis shows that the substance of her tasks is actually undisputed. For example, Defendant

11   asserts that Plaintiff "was responsible for assessing and analyzing an injured employee to

12   evaluate the medical needs required to facilitate the patient's appropriate and timely return to

13   work." *Id.* at ¶ 42. Plaintiff's primary dispute with this statement rests on a more restricted

14   interpretation of the words "assess," "analyze," and "evaluate." The Court does not need to

15   determine which party's interpretation is correct to determine that this is not a material fact

16   dispute. When it comes to the substance of Plaintiff's tasks, the parties differ only in their

17   vocabulary. Indeed, at oral argument, despite the parties' vehement disagreement about whether

18   Plaintiff's job duties qualify her for exemption, neither party challenged the Court's factual

19   recitation of Plaintiff's tasks.

20        Plaintiff's job duties were undisputedly "to provide ongoing, day-to-day case

21   management services for Defendants' customers by documenting the costs of care, preparing

22   reports regarding a plan of care, and identifying and implementing medical services to meet the

23   needs of Defendants' customers." Opposition, 5; Rieve Decl., ¶ 4 . Plaintiff explains that she

24   monitored and reported whether patients were receiving medical services in accordance with the

25   medical orders issued by the attending physician, although it was the physicians who had the

26   _____

27        [2]The issue of CHC's liability will be analyzed later, but for the purpose of relating
     the factual background, the Court will assume that Plaintiff was employed by both CHC

28   and CHC-WC.

1   decision-making power to order a course of treatment and the claims adjusters who had the

2   power to eliminate such treatment. Reply to SOF, ¶ 42.  Defendants do not dispute that Plaintiff

3   did not have any authority to order treatment, nor to eliminate, deny, suspend, or modify any

4   treatment ordered by a physician. *Id.* Plaintiff explains that FCMs do not make decisions about

5   reducing costs but "only document 'achieved cost savings' in Defendants' CMD/Win program

6   which is an 'inflexible' system comprised of preformatted templates."*Id.* at ¶ 71.  Plaintiff

7   characterizes her role as the "eyes and ears" of Defendants' customers, the claims adjusters. *Id.*

8   at ¶ 42.

9       Plaintiff testified in her deposition that she spent more than fifty percent of her time

10   communicating with doctors, patients and claims adjustors in order to understand the patients'

11   conditions, determine what medical care was being provided and evaluate whether it was

12   appropriate. *Id.* at  ¶ 51, 69. When Plaintiff interviewed patients, she would try to understand

13   their injuries or conditions and their previous care so that she could consider other alternatives

14   and advise them accordingly. *Id.* at ¶ 48. Plaintiff also explained in her deposition that she

15   sought to understand and synthesize the medical status and work demands of a patient "through

16   communication with the physician, including any necessary clarification of the client's physical

17   capacity for returning to work." *Id.* at ¶ 52. Plaintiff was guided in her duties by the Field Case

18   Management Manual ("FCM Manual"), which provided step-by-step instructions she must

19   follow when assigned a case, although Plaintiff explained that she only needed to look at it

20   occasionally.  *Id.* at  ¶ 114-15.

21       Plaintiff has stated that "in order to have the best possible outcomes, healthcare systems

22   and facilities need highly qualified, certified individuals performing the vital function of care

23   coordination" and explained that "[t]hrough their knowledge and expertise, case managers

24   provide oversight and coordination across settings and providers."  *Id.* at ¶ 56, 59.

25   The FCM Manual provides that the FCMs' duties involve "a skilled professional's critical

26   evaluation of a claimant's medical progress followed by case management actions that facilitate

27   recovery." Reply to SOF, ¶ 45. Although Plaintiff did not have the power to eliminate

28   unnecessary treatment, she did work to identify unnecessary procedures and treatments. *Id.* at ¶

4

72. Plaintiff also, at least in one particular case, educated a patient on how to identify symptoms of post-traumatic stress disorder. *Id.* at ¶ 65.

Defendants seek summary judgment on Plaintiff's overtime claims on the grounds that she falls into the professional and administrative exemptions under both federal and state law. Defendant also seeks summary judgment on Plaintiff's UCL, wage statement, and PAGA claims, in addition to seeking summary judgment on all claims against CHC on the grounds that Plaintiff was not employed by CHC.[3]

## II. LEGAL STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the opposing party must set out specific facts showing a genuine issue for trial; merely relying on allegations or denials in its own pleading is insufficient. *See Anderson,* 477 U.S. at 248-49. A party cannot create a genuine issue of

[3]Both parties have also filed various other papers, including requests for judicial notice and objections to certain declarations. To the extent a document or declaration is relied upon, such reliance represents the Court's ruling on the matter. To the extent the Court did not rely on the document or declaration, the request and/or objection is denied as moot.

material fact simply by making assertions in its legal papers.  *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982).  Rather, there must be specific, admissible evidence identifying the basis for the dispute.  *Id.*  The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]."  *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

### A. FLSA Claim

The Department of Labor ("DOL") has set forth exemptions to FLSA coverage, and Defendants argue that the professional and administrative exemptions apply to Plaintiff. *See* 29 C.F. R. § 541.0 *et seq.* The FLSA "is to be liberally construed to apply to the furthest reaches consistent with Congressional direction" such that "FLSA exemptions are to be narrowly construed against . . . employers and are to be withheld except as to persons plainly and unmistakenly within their terms and spirit." *Klem v. County of Santa Clara*, 208 F.3d 1085, 1089 (9th Cir.2000) (internal quotation marks and citations omitted); *see also Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1124-25 (9th Cir.2002).

#### 1. Professional Exemption

The professional exemption to the FLSA applies to those employees (1) who are compensated on a salary or fee basis at a rate of not less than $455 per week and (2) whose primary duty is the performance of work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction. 29 C.F.R. § 541.300(a)."The question of how [an employee] spent his working time is a question of fact, but whether his particular activities excluded him from the overtime requirements of the FLSA is a question of law." *Edwards v. Audubon Ins. Group*, No. 02–1618, 2004 WL 3119911, at *4 (S.D. Miss. Aug. 31, 2004).

It is undisputed that Plaintiff was compensated at a higher rate than $455 per week. Reply to SOF, ¶ 40 ("Throughout Plaintiff's employment with the CHC-WC, she received a fixed weekly salary of $954 to $1096 regardless of the number of hours she worked or the quality of her work.").

The second inquiry is whether Plaintiff satisfies the three-prong "duties" test of the "primary duty" requirement: (1) the employee must perform work requiring advanced knowledge; (2) the advanced knowledge must be in a field of science or learning; and (3) the advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction. 29 C.F.R. § 541.301(a). The performance of such work must be the "primary duty," or the "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a).

The DOL has made clear that "[r]egistered nurses who are registered by the appropriate State examining board generally meet the duties requirements for the learned professional exemption." 29 C.F.R. § 541.301(e)(2). It is undisputed that Plaintiff is a registered nurse and that she was required to be a registered nurse to work as an FCM-Med. Reply to SOF, ¶ 17, 20. Plaintiff has thus satisfied the second and third prongs of the duties test, as her advanced knowledge is in a field of science and was acquired by a prolonged course of specialized intellectual instruction. *See Powell v. American Red Cross,* 518 F. Supp. 2d 24, 39 (D.D.C. 2007) (registered nurses satisfy the second and third elements of the primary duty test).

The mere fact that Plaintiff is a registered nurse, however, does not end the Court's inquiry. As the *Powell* court reasoned, the DOL's provision "is not necessarily dispositive of the first element of that test, *i.e.*, whether a particular nursing position has as its primary duty the performance of work requiring advanced knowledge." *Id.; see also* 29 C.F.R. § 541.2 (exempt or nonexempt status of an employee must be determined based on whether the employee's salary and duties meet the requirements of the regulations for a particular exemption). The DOL has explained that

"[w]ork requiring advanced knowledge" means work which is predominantly intellectual in character, and which includes work requiring the consistent exercise of discretion and

judgment, as distinguished from performance of routine mental, manual, mechanical or physical work. An employee who performs work requiring advanced knowledge generally uses the advanced knowledge to analyze, interpret or make deductions from varying facts or circumstances. Advanced knowledge cannot be attained at the high school level.

29 C.F.R. § 541.301(b). To determine whether Plaintiff is exempt as a professional, this Court must thus determine whether Plaintiff's specific work "requir[ed] advanced knowledge," the first prong of the duties test.

Defendants first argue that Plaintiff is automatically exempt as a professional because she is a registered nurse who relied upon her nursing skills, judgment, training, and experience to perform her duties. Motion for Summary Judgment, 6.  This is first and foremost a curious assertion because Defendants later argue that Plaintiff is exempt as a professional under California law precisely because her duties are entirely distinct from those of a registered nurse engaged in the practice of nursing. *See* Reply, 19-20. As explained above and as held in the *Powell* case, the fact that Plaintiff holds an RN degree is not dispositive, nor is a conclusory statement from Plaintiff's deposition that she relied upon her RN training. An inquiry of whether Plaintiff's work required advanced knowledge necessitates a thorough examination of the tasks comprising Plaintiff's primary duties. As will be detailed in the remainder of this Order, the Court's examination of Plaintiff's duties demonstrates that her role in the hierarchy of Defendants' business is quite closely aligned with the position occupied by a registered nurse, such that Plaintiff should be afforded the same treatment under the law as registered nurses engaged in the practice of nursing. As it turns out, this conclusion exempts Plaintiff under federal law but renders her nonexempt under state law.

The Court will first thoroughly address Plaintiff's exemption from FLSA coverage as a professional employee. The parties, not surprisingly, strongly dispute whether Plaintiff's primary duties required advanced knowledge. Defendants argue that Plaintiff's primary tasks require advanced knowledge because they necessitated the use of Plaintiff's discretion and independent judgment. Motion for Summary Judgment, 8-9. Plaintiff, on the other hand, asserts that she

performed "sub-professional, routine work" that "was highly standardized and closely controlled by the 'guidelines.' " Opposition, 20. The Court agrees with Defendants that Plaintiff exercised independent judgment and was engaged in non-clerical work, such that her primary duties required "advanced knowledge" that satisfies the duties test for the FLSA professional exemption.[4]

In fact, Plaintiff's job description is not so different from that of a nurse engaged in direct patient care. Plaintiff's job duties "were to provide ongoing, day-to-day case management services for Defendants' customers by documenting the costs of care, preparing reports regarding a plan of care, and identifying and implementing medical services to meet the needs of Defendants' customers." Opposition, 5; Rieve Decl., ¶ 4. Plaintiff testified in her deposition that she spent more than fifty percent of her time communicating with doctors, patients and claims adjustors in order to understand the patients' conditions, determine what medical care was being provided and evaluate whether it was appropriate. Reply to SOF, ¶ 51, 69. When Plaintiff interviewed patients, she would try to understand their injury or condition and their past treatments so that she could consider other alternatives and advise them accordingly. *Id.* at ¶ 48. Plaintiff also explained in her deposition that she sought to understand and synthesize the medical status and work demands of a patient "through communication with the physician, including any necessary clarification of the client's physical capacity for returning to work." *Id.* at ¶ 52. Both Plaintiff and registered nurses engaged in the practice of nursing have patient health as their priority. Both act as an intermediary between the patients and doctors and provide advice to patients. Although Plaintiff does not examine patients as would a RN engaged in direct patient care, her role in Defendants' business is extremely similar to the role occupied by a RN in a medical practice.

The evidence demonstrates that Plaintiff's work was advanced beyond the level of a clerical worker. Plaintiff herself acknowledged that "in order to have the best possible outcomes,

_____

[4]And, in fact, at oral argument, Plaintiff ultimately agreed that she qualifies for the professional exemption from FLSA coverage.

9

1    healthcare systems and facilities need highly qualified, certified individuals performing the vital

2    function of care coordination" and explained that "[t]hrough their knowledge and expertise, case

3    managers provide oversight and coordination across settings and providers." *Id.* at ¶ 56, 59.

4    The Coventry Field Case Manager Manual provides that the FCMs' duties involved "a skilled

5    professional's critical evaluation of a claimant's medical progress followed by case management

6    actions that facilitate recovery." Reply to SOF, ¶ 45. Although Plaintiff did not have the power

7    to eliminate unnecessary treatment, she did work to identify unnecessary procedures and

8    treatments. *Id.* at ¶ 72. Plaintiff also, at least in one particular case, educated a patient on how to

9    identify symptoms of post-traumatic stress disorder. *Id.* at ¶ 65. Plaintiff did not merely input

10   routine data but engaged in activities that demonstrate she is a skilled health care professional.

11          Plaintiff has taken care to point out the limitations of her position as a FCM, but none of

12   her recited limitations are determinative of the Court's "advanced knowledge" inquiry.

13   Plaintiff's limitations are similar to the limitations shared by registered nurses in the practice of

14   nursing, who are presumptively exempt from FLSA coverage. For example, Plaintiff explains

15   that her job was limited to monitoring and reporting whether patients are receiving medical care

16   in accordance with the orders issued by the attending physician. *Id.* at ¶ 42. Further, Plaintiff

17   notes that it is the claims adjusters and not the FCMs who have the power to order the

18   elimination of any treatment. *Id.*  Plaintiff asserts that the FCMs do not operate as decision

19   makers but rather as the "eyes and ears" of the claims adjusters. *Id.* Plaintiff explains that FCMs

20   do not make decisions about reducing costs but "only document 'achieved cost savings' in

21   Defendants' CMD/Win program which is an 'inflexible' system comprised of preformatted

22   templates."*Id.* at ¶ 71. Plaintiff had no authority to challenge, override or modify the claim

23   adjusters' decisions. *Id.* at ¶ 76. Yet, even though Plaintiff existed in a hierarchy, she was clearly

24   still required to exercise independent judgment and discretion in the course of her duties. Like a

25   registered nurse in practice, she interacted with physicians and patients and provided skilled

26   advice, despite the fact that she did not have the authority to order or alter any course of

27   treatment herself. Plaintiff's duties required "advanced knowledge," such that she satisfies all

28   three prongs of the "duties test" required for the FLSA professional exemption.

Case law confirms the Court's conclusion. This Court is not aware of any case, nor do Plaintiffs cite to any case, in which a case manager or a registered nurse in any position has not been deemed a professional exempt from FLSA coverage. Because Plaintiff's duties closely mirror the responsibilities of a registered nurse in practice and because her job title is a "case manager", this line of cases is extremely instructive. In *Withrow v. Sedgwick Claims Mgmt,* for example, the court determined that the plaintiff, a registered nurse serving as a telephonic case manager for a claims management service, was subject to the FLSA's professional exemption. – F. Supp. 2d –, No. 10-993, 2012 WL 242773, at *14 (S.D.W. Va. Jan. 25, 2012). There, the court noted that, as a telephonic case manager, plaintiff's "medical knowledge enabled her to examine claimants' conditions and provide advice on what to expect from treatments." *Id.* Plaintiff makes the conclusory assertion that "none" of the duties discussed in *Withrow* are present in this case. First, Plaintiff appears to conflate the *Withrow* plaintiff's duties as a utilization review nurse with those of her later case manager position, although both were found to be exempt. Second, Plaintiff has admitted that she spent more than fifty percent of her time communicating with doctors, patients and claims adjustors in order to understand the patients' conditions, determine what medical care was being provided and evaluate whether it was appropriate. Reply to SOF, ¶ 51, 69. Plaintiff has also provided at least one example where she educated a patient about his potential condition. *See id.* at ¶ 65 (Plaintiff educated a patient on how to identify symptoms of post-traumatic stress disorder). The present facts thus appear to be closely analogous to those in *Withrow,* where the nurse case managers also provided services and advice to patients. This case therefore provides strong support for the notion that Plaintiff utilized independent judgment and discretion in her duties of the type intended to be exempt from FLSA coverage.

Similarly, in *Powell,* the plaintiff, like Plaintiff here, attempted to argue that her work was "routine" and did not involve "varying facts or circumstances." 518 F. Supp. 2d at 41. The *Powell* court held that the plaintiff's medical record review work involved "individual results," which was "entirely consistent with the DOL regulations under which 'an employee who performs work requiring advanced knowledge generally uses the advanced knowledge to

1    analyze, interpret or make deductions from varying facts or circumstances.' " *Id.* (citing 29

2    C.F.R. § 541.301). Here, too, Plaintiff deals with extremely individualized results - a care plan

3    for each of her patients. Even if Plaintiff follows the same routine for each patient based on the

4    FCM Manual, like the plaintiff in *Powell*, her decisions are fact-specific and tailored to each of

5    her patient's individual situations. Such individualized attention is probative of the advanced

6    knowledge required to carry out Plaintiff's duties.

7         *Chatfield v. Children's Services, Inc.* is also instructive. 555 F. Supp. 2d 532 (E.D. Pa.

8    2008). There, plaintiff case managers made initial assessments of whether truancy was

9    occurring, visited the child's school and home, talked to the child's family, assessed the family's

10   needs, and ensured that the child would receive appropriate resources. *Id.* at 535. The *Chatfield*

11   court accordingly found that the case managers exercised independent discretion and judgment.

12   *Id.* Again, Plaintiff, too, spent more than fifty percent of her time communicating with doctors,

13   patients and claims adjustors in order to understand the patients' conditions, determined what

14   medical care was being provided, and evaluated whether it was appropriate; Plaintiff also

15   attempted to identify any unnecessary treatments. *Id.* at ¶ 51, 69, 72. These duties closely align

16   with the duties in *Chatfield* held to utilize independent judgment and discretion.

17        Plaintiff attempts to argue at times throughout her opposition that the existence of

18   guidelines precludes her ability to exercise independent judgment. *See* Opposition, 7-9. Yet, case

19   law has made clear that "reliance . . . on guidelines does not, by itself, indicate the lack of

20   professional discretion and judgment." *Powell,* 518 F. Supp. 2d at 41 (citing *Owsley v. San*

21   *Antonio Independent School Dist.* 187 F.3d 521, 526 (5th Cir. 1999)). Like in *Powell,* although

22   the Manual here contains guidelines as to Plaintiff's handling of each case, she must still deal

23   with the individual intricacies of each patient's care.

24        Because Plaintiff's primary duties involve the exercise of independent judgment and

25   discretion and because the nature of her duties closely aligns with the responsibilities of

26   presumptively exempt registered nurses, she satisfies the "advanced knowledge" prong of the

27   duties test and is thus a professional exempt from FLSA coverage.

28

12

2. <u>Administrative Exemption</u>

Because the Court has determined that Plaintiff falls into the professional exemption precluding her from FLSA coverage, it need not address the merits of Defendants' administrative exemption argument.

**B. California Law Overtime Claim**

California Labor Code § 510 ("Section 510") requires that employees be compensated with overtime pay for any work in excess of eight hours per day or in excess of forty hours in one week. California Labor Code § 515 ("Section 515") provides that the Industrial Welfare Commission ("IWC") may establish exemptions from Section 510's overtime compensation requirement. Pursuant to Section 515, the IWC has promulgated exemptions for professional and administrative employees. *See* California Wage Order 4-2001, codified as 8 Cal. Code. Regs. §§ 11040 ("Wage Order 4-2001"). Defendants assert that Plaintiff qualifies under both the professional and administrative exemptions.

The question of whether Plaintiff is a professional or administrative employee exempt from overtime coverage is a mixed question of law and fact. *Ramirez v. Yosemite Water Co.,* 20 Cal. 4th 785, 794 (Cal. 1999). The issue of what Plaintiff did as an employee for Defendants is a question of fact, while the precise scope of the exemptions is a question of law. *Id.* Thus, if there is no dispute as to Plaintiff's job duties, this Court can hold as a matter of law that Plaintiff either does or does not fall into the professional or administrative exemptions. The fact that Plaintiff did not move for summary judgment to affirmatively establish that she does not fall into California's exemptions does not bar the Court from granting summary judgment for Plaintiff on that issue. *See Cool Fuel, Inc. v. Connett,* 685 F.2d 309, 311 (9th Cir. 1982) ("[T]he overwhelming weight of authority supports the conclusion that if one party moves for summary judgment and . . . there is no genuine dispute respecting a material fact essential to the proof of movant's case and that the case cannot be proved if a trial should be held, the court may sua sponte grant summary judgment to the non-moving party."); *Gospel Missions of Am. v. City of Los Angeles,* 328 F.3d 548, 553 (9th Cir. 2003) (even when there has been no cross-motion for

summary judgment, district courts may sua sponte enter summary judgment against the moving party when the salient issues were presented in its original motion such that it had a "full and fair opportunity to ventilate the issues involved").

Here, there is no issue of material fact as to Plaintiff's job duties. Because the issue of whether Plaintiff's duties fall into the professional or administrative exemption is a question of law and because Defendants had a full and fair opportunity to address the issues in their summary judgment motion, this Court hereby sua sponte GRANTS summary judgment in favor of Plaintiff. Plaintiff does not, as a matter of law, fall into either the professional or the administrative exemption to California's overtime laws.


1. Professional Exemption

The IWC defines the scope of the California professional exemption as an employee who (1) is primarily engaged in a learned or artistic profession; (2) regularly exercises discretion and independent judgment in the performance of exempt duties; and (3) earns a monthly salary equivalent to no less than two times the state minimum wage for full-time employment. *Id.* at § 1(A)(3)(b)-(d). To be engaged in a learned or artistic profession, an employee must engage in "[w]ork requiring knowledge of an advanced type in a field or science or learning customarily acquired by a prolonged course of specialized intellectual institution and study" and work that "is predominantly intellectual and varied in character (as opposed to routine mental, manual mechanical, or physical work) and is of such character that the output produced or the result accomplished cannot be standardized in relation to a given period of time."*Id.* at § 1(A)(3)(b). The IWC goes on to make clear that "registered nurses employed to engage in the practice of nursing shall not be considered exempt professional employees, nor shall they be considered exempt from coverage for the purposes of this subparagraph unless they individually meet the criteria established for exemption as executive or administrative employees." *Id.* at § 1(A)(3)(f).

The Court does not agree with Plaintiff's contention that no employee who happens to hold a RN degree can ever be exempt from Section 510 coverage. The plain language of the statute states that "registered nurses employed to engage in the practice of nursing" are not

exempt from coverage. *Id.* Here, it is undisputed that, although Plaintiff is a registered nurse, she is not engaged in the practice of nursing. Reply to SOF, ¶ 24. Plaintiff is thus not automatically immunized from exemption arguments by § 1(A)(3)(f).

Section 1(A)(3)(f) is, however, probative of a significant policy distinction between the FLSA professional exemption and the California professional exemption. Registered nurses are generally considered professionals exempt from FLSA coverage, *see* 29 C.F.R. § 541.301(e)(2), but are not typically exempt from California state law overtime coverage. *See* California Wage Order 4-2001, § 1(A)(3)(f).  This Court is not willing to ignore a clear and deliberate policy choice by the state legislators to provide more expansive coverage under state overtime laws than is available under the FLSA. *See Ramirez,* 20 Cal. 4th at 795 ("The IWC's wage orders, although at times patterned after federal regulations, also sometimes provide greater protection than is provided under federal law in the Fair Labor Standards Act (FLSA) and accompanying federal regulations.").

The Department of Labor Standards Enforcement ("DLSE") Opinion Letters cited by Plaintiff are also instructive in interpreting the Legislature's intent. This Court recognizes that it is ultimately the judiciary's role to construe the language of a statute, but DLSE letters are due "consideration and respect." *Harris v. Superior Court*, 53 Cal. 4th 170, 190, 266 P.3d 953, 965 (2011). In a 1997 letter, the DLSE clarified that "[b]ased on all the evidence presented, the IWC concluded that registered nurses still needed its protections." DLSE Opinion Letter 1997.03.10. The letter also went on to state that nurses could not fall into the professional exemption until they were given "consistent exercise of discretion and independent judgment, control over one's practice, and full integration in the decision making process." *Id.* The DLSE recognized that "[a]ll nurses exercise discretion and independent judgment" and did not dispute that nurses would be exempt under federal law but still gave great weight to the IWC's specific concerns about nurses' lack of control over their practices and their lack of equal participation in the decision-making process. *Id.*

The IWC made a conscious decision to extend to registered nurses the protection of California overtime laws denied to them under federal law. The DLSE Opinion Letter explicitly

recognizes the distinction between the FLSA and California law and explains the rationale behind it: the desire to protect registered nurses until they are afforded the control and decision-making power they deserve. Although Plaintiff is undisputedly not engaged in the practice of nursing, this concern applies equally to her, and this Court will respect the intent with which the IWC regulations were promulgated. Plaintiff is a registered nurse who was employed in a position requiring her RN degree, in which she was still not afforded full control and decision-making power. The physicians had the decision-making power to order a course of treatment and the claims adjusters had the power to eliminate such treatment. Reply to SOF, ¶ 42. Defendants do not dispute that Plaintiff did not have any authority to order treatment, nor to eliminate, deny, suspend, or modify any treatment ordered by a physician. *Id.* In short, Plaintiff was afforded no actual control over the decision-making process, which was completely controlled by physicians and claims adjusters. By the IWC's rationale, she is thus still entitled to the protection of California overtime laws.

At oral argument, Defendants argued that the California legislature was not concerned with employees who may have a nursing degree but are engaged in a different position; Defendants pointed to the example of management level employees in their company who possess RN degrees. Defendants miss the Court's point. The mere fact that Plaintiff earned her RN degree is not dispositive; the Court's inquiry focuses on the nature of her duties, which here closely mirror the roles and responsibilities of a registered nurse engaged in patient care. And, because Plaintiff's role in Defendants' business was much like a RN's role in the hierarchy of a medical practice, she should be afforded the same protections under California state law that are extended to registered nurses engaged in the practice of nursing. Plaintiff, just like a registered nurse engaged in the practice of nursing, is secondary to the physicians, who are actually in charge of the patient's care. Plaintiff, like a registered nurse, can advise patients and provide recommendations to physicians but does not herself have the power to order or eliminate a course of treatment. The facts indicate that, although Plaintiff is not employed in the practice of nursing, her job responsibilities and ability to use independent judgment closely mirror the levels of discretion she would have as a registered nurse engaged in direct patient care.

In finding Plaintiff exempt from FLSA overtime coverage due to the professional exemption, the Court held that she should be treated like a registered nurse and followed the line of cases in which registered nurses have consistently been found exempt professionals under the FLSA. Defendants cannot have it both ways. Plaintiff's qualifications and responsibilities align her with registered nurses engaged in the practice of nursing. They are permitted similar levels of independent judgment and discretion and occupy similar positions in the business hierarchy. Plaintiff shall thus be exempt when a statute explicitly states a preference for finding nurses exempt from overtime coverage, as with the FLSA, but she shall not be exempt when the legislature has clearly expressed a desire to provide nurses with overtime coverage, as the California legislature has done. Plaintiff does not qualify for the professional exemption under California law.

### 2. Administrative Exemption

The IWC has made administrative employees exempt from Section 510 overtime coverage if (1) their duties and responsibilities involve the performance of office or non-manual work directly related to management policies or general business operations of their employer or their employer's customers; (2) they customarily and regularly exercise discretion and independent judgment; (3) they perform under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge; (4) they are primarily engaged in duties meeting the test of exemption; and (5) they earn a monthly salary at least two times the state minimum wage for full-time employment. *Id.* at § 1(A)(2).

The California Supreme Court very recently clarified the meaning of the first element required to qualify under the administrative exemption. To be "directly related" to management policies or general business operations, the work must be both "qualitatively administrative" and "quantitatively . . . of substantial importance to the management or operations of the business." *Harris,* 53 Cal. 4th at 181. Because the test is conjunctive, Plaintiff need only demonstrate that Defendants have not met their burden as to one part of the test. *Id.* at 182 (citing *Ramirez,* 20 Cal. 4th at 794-95). The *Harris* decision sets forth an extensive framework for how courts

17

1  should analyze the first prong of the "directly related" test: whether work is "qualitatively

2  administrative." It does away with the administrative/production dichotomy previously utilized

3  by courts and instead instructs courts to "consider the particular facts before them and apply the

4  language of the statutes and wage orders at issue." *Id.* at 190. Because this Court is the first

5  federal or state court to analyze and apply the *Harris* decision's effect on the scope of the

6  California administrative exemption, it will do so in some depth.

7       The California Supreme Court's decision in *Harris* developed from a unique procedural

8  background that informs any analysis of its holding. The *Harris* trial court, ruling on claims of

9  plaintiff claims adjustors, initially split the claims into those arising before and after October 1,

10  2000, the date the IWC updated Wage Order 4. *Id.* at 175. The trial court held that the claims

11  adjusters whose claims arose before October 1, 2000 were nonexempt production workers

12  pursuant to the *Bell* line of cases, *see Bell v. Farmers Ins. Exchange,* 878 Cal. App. 4th 805

13  (2001) ("*Bell II*"), but decertified the class of claims adjusters whose claims arose after October

14  1, 2000 because it did not believe the *Bell* cases applied to the revised version of Wage Order 4.

15  *Id.* at 176. Both parties sought interlocutory appeal at the urging of the trial court. *Id.* The Court

16  of Appeal held that all plaintiff claims adjusters were nonexempt employees under the terms of

17  the Wage Order 4, both before and after its amendment in 2000. *Id.*

18       The primary thrust of the California Supreme Court's decision in *Harris* is that the Court

19  of Appeal "failed to properly analyze the question" by interpreting the Wage Order

20  categorically. *Id.* To fully comprehend this criticism and understand the latest *Harris* directive, it

21  is necessary to closely examine the revision of Wage Order 4. Wage Order 4-1998 covered

22  claims arising before October 1, 2000, while Wage Order 4-2001, the current version of Wage

23  Order 4, covers all claims arising thereafter. Wage Order 4-1998 exempted from state overtime

24  compensation requirements "persons employed in administrative, executive, or professional

25  capacities" but failed to articulate the scope of the administrative exemption. *Id.* at 177; Wage

26  Order 4-1998 § 1(A). Wage Order 4-1998's only guidance as to the purview of the administrative

27  exemption was that it was limited to employees "engaged in work which is primarily intellectual,

28  managerial, or creative, and which requires the exercise of discretion and independent judgment,

1    and for which the remuneration is not less than $1150.00 per month." *Id.* at § 1(A)(1).

2    The *Harris* decision details the unintended effects of Wage Order 4-1998 and other IWC

3    orders issued that year, which ultimately resulted in about eight million workers losing their

4    right to overtime pay. 53 Cal. 4th at 177. In response, the California Legislature quickly passed

5    the "Eight-Hour-Day Restoration and Workplace Flexibility Act of 1999," which amended

6    California Labor Code § 510 to mandate overtime pay for California employees who work more

7    than eight hours in one day or forty hours in one week. *Id.* at 178. It was thus clear that the 1999

8    Act intended to strengthen overtime protections for California workers.

9    Importantly, the 1999 Act also added California Labor Code § 515(a) ("Section 515(a)")

10   to clarify the scope of exemptions from overtime coverage. Section 515(a) exempts from Section

11   510 coverage "executive, administrative, and professional employees, provided that the

12   employee is primarily engaged in the duties that meet the test of exemption, customarily and

13   regularly exercises discretion and independent judgment in performing those duties, and earns a

14   monthly salary equivalent to no less than two times the state minimum wage for full-time

15   employment." Section 515(a) also directed the IWC to conduct a review of the duties meeting

16   the test of exemption, in response to which the IWC promulgated Wage Order 4-2001. *See*

17   *Harris,* 53 Cal. 4th at 178.

18   The statutory text is quite clear that the scope of administratively exempt duties is to be

19   defined by IWC regulations. The California Supreme Court has also confirmed Section 515(a)'s

20   intended reliance on the IWC's wage orders, explaining that whether work "meets the test of

21   exemption" pursuant to Section 515 must be "understood in light of the applicable wage order."

22   *Id.* The current applicable wage order is Wage Order 4-2001. The *Harris* decision emphasizes

23   that one of the vital revisions to the original Wage Order now present in Wage Order 4-2001 is a

24   provision that the terms "exempt" and "non-exempt" are to be construed in conjunction with

25   certain incorporated federal regulations. *Id.* at 178-9. Thus, when a court is called upon to

26   consider Wage Order 4-2001, "just as the statute is understood in light of the wage order, the

27   wage order is construed in light of the incorporated federal regulations."*Id.* at 179.

28   This new provision in Wage Order 4-2001 regarding incorporated federal regulations,

1  along with other improvements from Wage Order 4-1998, are responsible, in large part, for the

2  California Supreme Court's rejection of the administrative/production dichotomy. This

3  dichotomy, previously relied upon by a multitude of courts to consider the scope of the

4  administrative exemption, distinguishes between exempt administrative employees who are

5  primarily engaged in "administering the business affairs of the enterprise" and production-level

6  employees whose "primary duty is producing the commodity or commodities, whether goods or

7  services, that the enterprise exists to produce and market." *Bell II,* 87 Cal. App. 4th at 821.  In

8  applying the dichotomy to the facts of its case, the *Bell* court found that because the *Bell*

9  defendants' business was to handle claims, the claims representatives were nonexempt

10  production workers. 87 Cal. App. 4th at 826.

11      *Bell* is now, however, essentially deprived of all precedential value for claims arising

12  after October 1, 2000. The California Supreme Court has explained that *Bell*'s reliance on the

13  administrative/production dichotomy was permissible - but only because The *Bell* court had no

14  occasion to consider Wage Order 4-2001 and lacked the benefit of its clarifications as to the

15  scope of the administrative exemption. *Harris,* 53 Cal. 4th. at 183-85. Wage Order 4-1998 was

16  too sparse in terms of detailing the scope of the administrative exemption, such that the *Bell*

17  court correctly turned to the only guidance it had available: the administrative/production

18  dichotomy. 87 Cal. App. 4th at 819-23. Present courts do not suffer from the same limited scope

19  of information, as Wage Order 4-2001 and its incorporated federal regulations provide a more

20  comprehensive scheme for analyzing the scope of the administrative exemption.

21      The California Supreme Court thus concluded that the Court of Appeal in *Harris* had

22  afforded too much weight to the *Bell* line of cases, in holding that "plaintiffs' work -

23  investigating claims, determining coverage, setting reserves, etc. – is not carried on at the level

24  of policy or general operations, so it falls on the production side of the dichotomy." 53 Cal. 4th.

25  at 187. The Court of Appeal erred in relying on *Bell II,* a distinguishable case, to create a rigid

26  rule, instead of considering "all of the relevant aspects of Federal Regulations former part

27  541.205, specifically subpart (b)." *Id.* The Court of Appeal majority also erred in considering

28  federal statutes not incorporated into Wage Order 4-2001 and by only considering Federal

Regulations former part 541.205(a), because "Federal Regulations former part 541.205(a), (b), and (c) must be read together in order to apply the 'directly related' test and properly determine whether the work at issue satisfies the administrative exemption." *Id.* at 188. For example, the California Supreme Court clarified that courts must consider the general description of administrative duties provided in (b), which "shows that whether work is part of the 'administrative operations' of a business depends, in part, on whether it involves advising management, planning, negotiating, and representing the company." *Id.*

The California Supreme Court's mandate to courts applying the California administrative exemption is quite clear. Courts are directed to cease utilizing the administrative/production worker dichotomy as a dispositive test because, taken together, "the applicable Labor Code statutes, wage orders, and incorporated federal regulations now provide an explicit and extensive framework for analyzing the administrative exemption."[5] *Id.* at 182. Consequently, this Court's task is to determine whether Plaintiff's work qualifies as administrative, given the language of Section 515(a), Wage Order 4-2001, and the federal regulations incorporated by reference into Wage Order 4-2001 - 29 C.F.R. §§ 541.201-205, 541.207-208, 541.210, and 541.215[6]. *See* Wage Order 4-2001 § 1(A)(2)(f).

Section 515(a) first provides that the employee's duties must meet the test of exemption and then tasks the IWC with conducting a review of such duties. The IWC, in turn, explains that administrative duties are those "directly related to management policies or general business operations of [the plaintiff's] employer or [the] employer's customers." Wage Order 4-2001, §

---

[5]To be clear, the *Harris* decision only analyzes the qualitative inquiry and not the quantitative inquiry regarding the level of importance of the employee's duties. Because the Court finds that Plaintiff's duties are not qualitatively administrative, it has no occasion to consider the quantitative inquiry because the administrative exemption requires both prongs of the test to be satisfied. *Harris,* 53 Cal. 4th at 182.

[6]All citations to title 29 of the Code of Federal Regulations are as the federal regulations existed on January 1, 2001, the effective date of Wage Order 4-2001. It is that version of the federal regulations - and that version only - that was incorporated by reference into the Wage Order.

1(A)(2)(a). Finally, the incorporated federal regulations - in particular, 29 C.F.R. §§ 541.205 (2000) - shed light on the "directly related" inquiry. The California Supreme Court also questioned the logic of attempting to analogize between the roles of employees in two entirely different businesses, such that any prior case law discussing anything other than Plaintiff's exact duties is of limited relevance under the *Harris* test for administrative exemption. *See* 53 Cal. 4th at 189 (discussing "the difficulty in relying on the particular role of employees in one enterprise to deduce a rule applicable to another kind of business").

Because Section 515(a) does not provide a substantive definition of what duties meet the "test of exemption," this Court must start its analysis with a plain language reading of Wage Order 4-2001. There, the IWC explains that, to be exempt, the employee's duties and responsibilities must involve "the performance of office or non-manual work directly related to management policies or general business operations of [the] employer or [the] employer's customers." Wage Order 4-2001, § 1(A)(2)(a). Here, it is undisputed that Plaintiff's work is "office or non-manual work." What is less obvious from the plain text of Wage Order 4-2001 is whether her duties are directly related to management policies or general business operations.

To shed light on this inquiry, the Court must turn, as instructed by *Harris*, to the federal regulations incorporated into Wage Order 4-2001. The California Supreme Court criticized the Court of Appeal's *Harris* decision for failing to consider the full text of Federal Regulations former part 541.205; this Court will not make the same mistake. After a thorough consideration of subsections (a), (b), and (c), this Court concludes that Plaintiff's duties and responsibilities do not meet the test of exemption.

Section 541.205(a) first sets forth the inquiry that served as the basis for the administrative/production dichotomy. Because the California Supreme Court has expressed stark disapproval of the continued vitality of that dichotomy, *see Harris,* 53 Cal. 4th at 189 (noting the "strain" of "fit[ting] the operations of modern-day post-industrial service-oriented businesses into the analytical framework formulated in the industrial climate of the 1940s"), this Court will

not consider it.[7]

Subsection (a) then addresses the relative importance of the employee's work, limiting the administrative exemption "to persons who perform work of substantial importance to the management or operation of the business of his employer or his employer's customers." This is essentially the same analysis as the California Supreme Court's quantitative inquiry of importance, although the federal regulations address together the qualitative and quantitative aspects of the exemption inquiry, while the California Supreme Court separates them into a two-prong test. *See Harris,* 53 Cal. 4th at 181. An inquiry addressing the relative importance of employees is a delicate analysis, as all employees of a business must serve *some* essential function, or their respective positions would not exist. Just as a retail clothing store cannot function without a store manager, nor can it function without salespeople. The key inquiry is thus perhaps not one of relativity or a focus on the word "substantial" but rather an examination of whether the employee's value directly flows "to the management or operation of the business." Such language indicates that the employee in question must hold a supervisory position instead of serving on the front lines of the business. Contrary to Defendants' contention at oral argument, the Court is not suggesting or establishing a per se requirement that an employee must be a supervisor to be administratively exempt. It is possible to imagine a situation in which a high level advisor does not supervise any employees but directly interacts with upper management. In most cases, however, it would seem that an employee whose value flows to management or the operation of the business would actually supervise other employees.

That is not the case here, nor is Plaintiff a high level advisor. Here, Plaintiff monitors the recovery plan ordered by the physician and the claim adjuster and does not, herself, have the power to alter the course of treatment. There is no evidence that Plaintiff serves as any other employee's supervisor. Although Plaintiff can make recommendations as to unnecessary treatment or cost-saving measures, she does not have the managerial authority to implement such

---

[7]The dichotomy, however, would only serve as further support for the conclusion that Plaintiff does not qualify for the administrative exemption.

1    changes or to alter policy measures. *Id.* at ¶ 42, 71, 76. Further, any advice Plaintiff provides is

2    on the individual level, far from questions affecting management or the general operations of the

3    business. It would significantly stretch of the plain meaning of "management or operations of the

4    business" to include Plaintiff's duties; because exemptions must be narrowly construed,

5    subsection (a) excludes Plaintiff from the exemption's reach. *See Ramirez,* 20 Cal. 4th. at 795

6    ("[E]xemptions from statutory mandatory overtime provisions are narrowly construed.").

7           Section 541.205(b) confirms the conclusion that Plaintiff is not an exempt administrative

8    employee. Subsection (b) explains that the "servicing" of a business is an administrative

9    operation, including such tasks as "advising the management, planning, negotiating, representing

10    the company, purchasing, promoting sales, and business research and control." Of this list of

11    administratively exempt tasks, Defendants only assert that Plaintiff "represented" the company.

12    Reply, 10. Defendants base this assertion on Plaintiff's statement that, "I feel it's very important

13    to represent the position that I do in the best that I can and so, therefore, I'm representing the

14    company the best that I can." Reply to SOF,. ¶ 93. Defendants adopt an excessively broad view

15    of the word "represent." *See Ramirez,* 20 Cal. 4th. at 795 (exemptions must be construed

16    narrowly). Every employee who interacts with members of the public or employees of other

17    businesses "represents" her employer. A cashier at a fast food restaurant represents his

18    employer, as a bank teller represents his bank. The statute is clear that not all employees who

19    interact with the public perform administratively exempt duties. *See* Section 541.205(c)(1) (a

20    bank teller does not qualify for the administrative exemption). The mere fact that Plaintiff took

21    pride in her work and attempted to provide her employer with a positive public image does not

22    transform the nature of her duties. Defendant does not attempt to argue that any of Plaintiff's

23    other duties qualify as "servicing" the business, nor does the Court find any evidence that her

24    duties would satisfy Section 541.205(b)'s definition of administrative operations.[8]

25           Subsection (c) of Section 541.205 is also instructive. It provides that "the phrase 'directly

26

27       [8]At oral argument, Defendant attempted to argue that Plaintiff "negotiated" in the course of her employment; and yet, was not able to point the Court to any evidence of this

28    contention.

related to management policies or general business operations' . . . [includes employees whose] work affects policy or whose responsibility it is to execute or carry it out . . . [as well as] a wide variety of persons who either carry out major assignments in conducting the operations of the business, or whose work affects business operations to a substantial degree." Defendants have failed to address this provision, as they have failed to address the other provisions of the correct version of Section 541. The Court is left to assume, however, that Defendants would argue that Plaintiff's role is to carry out case management policies and that her work involves carrying out major assignments. Subsection (c), if read to this broadest extent possible, would cover quite literally every single employee of every business. Every employee carries out his employer's policies, whether it is by following an employer's dress code or by utilizing the employer's stock options policy. Again, exemptions from mandatory overtime provisions are narrowly construed. *Ramirez,* 20 Cal. 4th. at 795. This Court must thus examine the most logical way to limit what has the potential to be all-encompassing category of employees.

Subsection (c)(5) is particularly instructive, as it goes on to provide some examples of employees whose duties are directly related to management policies, including advisory specialists and consultants, credit managers, safety directors, claim agents, wage-rate analysts, tax experts, account executives of advertising agencies, and customers' brokers in stock exchange firms. Each of these listed positions possesses an important distinction from Plaintiff's duties[9], in that each of the listed employees likely has the power to make decisions affecting the company's business, policies and customers, while Plaintiff does not. Plaintiff can make recommendations and advise patients, but ultimately the decisions about patient care are made by the physician and the claims adjustors. Reply to SOF, ¶ 42, 71. The ability to take action on behalf of the employer seems a logical narrowing principle for the potentially overbroad language of subsection (c).  This Court does not hold that the ability to bind the employer is a requirement to be administratively exempt, particularly because the *Harris* decision explicitly

---

[9]Additionally, the listed positions are more likely to receive incentive-based compensation or commission, unlike Plaintiff.

1  requires a fact-intensive analysis instead of any bright line test. There are also situations in

2  which an employee might fall within the administrative exemption without having the power to

3  bind. As Defendants brought up at oral argument, a senior advisor to a board of directors might

4  very well qualify for the administrative exemption because his advice is directly related to

5  management policies and business operations. Yet, in most cases, for an employee's work to

6  affect policy or for him to carry out policy, it seems likely that he would be tasked with decision-

7  making authority, such that the absence of such authority is a relevant factor in the *Harris*

8  inquiry.

9      Here, Plaintiff can evaluate a patient's care plan and make recommendations to the

10  patient, physician, and claims adjuster, but Defendants have presented no evidence that Plaintiff

11  can take affirmative action that would bind anyone other than herself. As Defendants explain,

12  "Plaintiff used her judgment as a registered nurse and Certified Case Manager to evaluate

13  possible care options for injured workers and make recommendations as needed regarding the

14  appropriate care plan." Motion for Summary Judgment, 4. Plaintiff had no authority to make any

15  decision or implement any policy on behalf of her employer, nor is Plaintiff the type of high

16  level advisor who consults with upper management about policy decisions. Any advice that

17  Plaintiff provided was at the individual level, far removed from advice that is related to

18  management or the general operations of a business. Plaintiff's work is not directly related to

19  management policies or to business operations as a whole.

20      Under the test set forth in *Harris,* Plaintiff does not qualify for the administrative

21  exemption from overtime laws. Defendants have also failed to meet their burden because their

22  discussion of the first element of the administrative exemption - whether Plaintiff's work was

23  directly related to management policies or general business operations - relies almost exclusively

24  on their prior discussion of the FLSA administrative exemption. *See* Motion for Summary

25  Judgment, 20. In a footnote, Defendants acknowledge that the applicable federal regulations for

26  FLSA are not the same as those incorporated into Wage Order 4-2001, *see id.* at 19, n. 14, but

27  curiously they still fail to address the distinctions between the 2000 and 2004 versions of 29

28  C.F.R. § 541. For example, the current version of Section 541.201(b), which Defendants discuss

26

in relation to the FLSA administrative exemption, explicitly refers to areas such as insurance, personnel management, human resources, and employee benefits as work that is directly related to management or general business operations. 29 C.F.R. § 541.201(b) (2004); *see* Motion for Summary Judgment, 11. The 2000 version of the same federal regulation contains no such language. At oral argument, Defendants attempted to argue that the latest federal regulations are essentially the same as the federal regulations incorporated into Wage Order 4-2001. Yet, the *Harris* decision made clear that it was error for the Court of Appeal to consider statutes not explicitly incorporated by reference into the Wage Order. *Harris,* 53 Cal. 4th. at 189-90. As the California Supreme Court recognized, "[t]he IWC Statement issued in connection with Wage Order 4-2001 clearly states that '*only* those federal regulations specifically cited in its wage orders, and in effect at the time of promulgation' shall be applied in defining exempt duties under California law.'" (italics in original.) *Id.* at 190. It is thus very clear that only the 2000 version of 29 C.F.R. § 541 may be considered in analyzing what duties are exempt under California law.

In addition to relying on an inapplicable version of the federal regulations, Defendants make the conclusory assertion that "Plaintiff's primary duty was work directly related to the management or general business operations of CHC-WC and/or its clients under the correct standard announced in *Harris.*" Motion for Summary Judgment, 20. This baseless assertion is curious for a few reasons. First, the *Harris* court, as detailed extensively above, did not announce an explicit "standard;" in fact, quite the opposite. The *Harris* court explained that courts analyzing the administrative exemption must engage in a fact-specific analysis and examine each of the relevant statutes, wage orders, and incorporated federal regulations at issue. Defendants have completely failed to address the correct version of the federal regulations, nor is their wholly conclusory paragraph the fact-specific inquiry contemplated by *Harris.* Defendants have contravened the entire philosophy of the *Harris* decision in attempting to contort its holding that the administrative/production dichotomy is not dispositive into an affirmative, rigid standard. Defendants' analysis of *Harris* completely misses the mark.

An employer who claims an exemption from the California Labor Code's overtime

1  provisions has the burden of showing that the exemption applies. *Greko v. Diesel U.S.A., Inc.,*

2  277 F.R.D. 419, 423 (N.D. Cal. 2011) (citing *Ramirez,* 20 Cal. 4th at 794-95)). Defendants have

3  failed to meet their burden by a wide margin. As the Court has extensively discussed, the facts of

4  this case applied to framework set forth in *Harris* establish as a matter of law that Plaintiff is not

5  administratively exempt from overtime coverage under California state law. Defendants provide

6  a conclusory assertion to the contrary, misinterpret the holding of *Harris,* and discuss the

7  incorrect federal regulations. Defendants have failed to provide any evidence that Plaintiff's

8  duties meet the test of exemption as required by Section 515(a) and as defined by Wage Order 4-

9  2001 and 29 C.F.R. § 541.205 (2000). As such, not only have Defendants failed to meet their

10  burden showing that Plaintiff falls into the administrative exemption to California's overtime

11  laws but this Court sua sponte GRANTS summary judgment on this issue in favor of Plaintiff.

12

13        **C. Wage Statement Claim**

14        Defendants also seek summary judgment on Plaintiff's claim alleging a violation of

15  California Labor Code § 226 ("Section 226") for the failure to provide accurate itemized wage

16  statements. Section 226 mandates that an employer "furnish each of his or her employees . . . an

17  accurate itemized statement in writing showing (1) gross wages earned, [and] (2) total hours

18  worked by the employee . . ." Section 226(a). An employee who suffers injury as a result of a

19  knowing and intentional failure by an employer to comply with Section 226(a) may recover the

20  greater of all actual damages or fifty dollars for the initial pay period in which a violation occurs

21  and one hundred dollars per employee for each violation in a subsequent pay period, not to

22  exceed an aggregate penalty of four thousand dollars. Section 226(e)

23        Defendants make three arguments in support of their Motion for Summary Judgement on

24  Plaintiff's Section 226 claim. First, Defendants argue that Plaintiff's Section 226 claim must fail

25  because her California state law overtime claim failed. This Court has denied Defendants'

26  Motion for Summary Judgment on Plaintiff's California overtime claim, such that Defendants'

27  first argument no longer has merit.

28        Defendants next argue that because there is a good faith dispute as to Plaintiff's exempt

1 status, Plaintiff cannot establish the requirement that Defendants knowingly and intentionally

2 provided inaccurate wage statements. Based on Defendants' abject failure to meet their burden

3 of proving Plaintiff was exempt under California law, this Court is not willing to hold, as a

4 matter of law, that there was a good faith dispute as to Plaintiff's exempt status. The entirety of

5 Defendants' discussion of both of Plaintiff's potential exemptions under California law

6 comprises just slightly over three pages of Defendants' Motion for Summary Judgment, not a

7 small portion of which is headings. Defendants appear to believe that their more in-depth

8 discussion of *federal* exemptions should establish a good faith dispute as to *California*

9 exemptions. Yet, as the Court has described in detail above, California and federal exemptions

10 are not the same; each merits their own discussion. *See Ramirez,* 20 Cal. 4th at 798 ("where the

11 language or intent of state and federal labor laws substantially differ, reliance on federal

12 regulations or interpretations to construe state regulations is misplaced.").  Defendants cannot

13 completely neglect a substantive discussion of the California exemptions and then argue that

14 there is a good faith dispute. Whether Defendants "knowingly and intentionally" provided

15 inaccurate wage statements shall remain a question of fact for the jury.

16        Defendants finally assert that there is no evidence that Plaintiff suffered any actual injury.

17 Yet, under Section 226(a), an employee suffers an injury merely by being denied his right to

18 receive an itemized pay statement. *Velez v. Enterprise Protective Services, Inc.,* No. 5:10-CV-

19 0502 LHK, 2011 WL 3443637, at *4 (N.D. Cal. Aug. 8, 2011) (citing *Kisliuk v. ADT Sec.*

20 *Services, Inc.,* 263 F.R.D. 544, 548 (C.D. Cal. 2008)). It is undisputed that Plaintiff did not

21 receive an itemized wage statement, such that summary judgment is inappropriate based on an

22 alleged lack of injury.

23

24        **D. Unfair Competition Law Claim**

25        Plaintiffs assert a claim under Cal. Bus. & Prof. Code §§ 17200 ("UCL") for unfair,

26 unlawful and deceptive business practices based on Defendants' alleged violation of California

27 overtime laws and Defendants' alleged failure to provide meal and rest breaks. *See* SAC, ¶ 54-

28 67. Defendants seek to dismiss Plaintiff's UCL claim based on the alleged violation of overtime

laws on the assumption that the Court would grant summary judgment on those claims. Because

Plaintiff's California overtime claims survive, Defendants' Motion is DENIED as to Plaintiff's

UCL claim. Plaintiff has sufficiently alleged an unlawful business practice for her UCL claim to

be heard at trial.

### E. Private Attorney General Act Claim

Defendants' only basis to dismiss Plaintiff's PAGA claim is the assumption that

Defendants would prevail on Plaintiff's overtime claims. Because Plaintiff's California overtime

claims survive, Defendants' Motion for Summary Judgment on Plaintiff's PAGA claim is

DENIED.

### F. Claims Against Coventry Health Care, Inc.

Defendants seek the dismissal of all claims against Coventry Health Care, Inc. on the

basis that Plaintiff was only employed by Coventry Health Care Workers' Compensation, Inc.

Plaintiff, however, has provided evidence that CHC paid her salary, CHC is designated as her

employer on her W-2 form, and CHC promulgated policies to FCM employees of CHC-WC.

Opposition, 2-3; Reply to SOF, ¶ 200. Defendants have thus not met their burden of showing

that no material fact exists as to the identity of Plaintiff's employer.

### G. Plaintiff's Alleged Destruction of Evidence

Defendants argue first in a footnote and then in the Reply that this Court should dismiss

all of Plaintiff's claims because she destroyed evidence, primarily her personal emails and

documents related to personal appointments. This Court does not presently have sufficient

information regarding Plaintiff's alleged destruction of her personal emails to grant any sanction,

much less a dismissal of all of Plaintiff's claims. On that ground, Defendant's motion to dismiss

all claims based on the alleged spoliation of evidence is hereby DENIED WITHOUT

PREJUDICE. Defendant is free to bring a separate motion for discovery sanctions based on this

behavior, at which point the Court would likely hold a hearing to determine the extent of the

1 | alleged destruction, if any.

2

3

4 | **IV. DISPOSITION**

5 |      Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's FLSA claim

6 | but DENIED as to Plaintiff's California state law overtime claim, wage statement claim, UCL

7 | claim, PAGA claim, and claims against CHC. Defendants' motion to dismiss all claims based on

8 | Plaintiff's alleged destruction of evidence is also DENIED WITHOUT PREJUDICE. The Court

9 | sua sponte GRANTS summary judgment for Plaintiff on the issue of whether she is exempt from

10 | coverage under California overtime laws.

11

12 | IT IS SO ORDERED.

13 | DATED: April 25, 2012

14

15 |      _David O. Carter_

16 |      DAVID O. CARTER
     United States District Judge